COMMONWEALTH vs. ANTHONY BOTTIGLIO
(and three companion cases[1]).

Middlesex.    April 6, 1970. — June 8, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Practice, Criminal,* Suppression of evidence, Argument by prosecutor.
   *Error,* Whether error shown, Whether error harmful. *Evidence,* Ad-
   mitted without objection.

A motion by the defendant during trial of a criminal case to strike all
   testimony of a police officer "on the grounds of illegal entry and il-
   legal arrest," was rightly denied, even if the defendant first learned
   of the illegality at the trial, where he did not specify objections to
   particular portions of the testimony and some of it was clearly ad-
   missible. [595–596]
It was not necessary in a criminal case for this court to decide a ques-
   tion as to the propriety of comment by the prosecutor "on the failure
   to produce witnesses" where the defendant as the appealing party
   failed to include in the record precisely what was said by the prosecutor.
   [597]
A question as to the admissibility at a criminal trial of evidence of the
   defendant's marital status, which went in without objection or ex-
   ception, could not be raised for the first time in this court. [597–598]
There was no prejudicial error at the trial of two defendants for armed
   robbery and kidnapping in admitting testimony by police officers that
   prior to the robbery they had seen the defendants at various times
   together in a café. [598]
While a reference by the prosecutor in his closing argument at a trial for
   armed robbery and kidnapping to the defendants as "people like
   these sitting around hatching up jobs" might well have been left
   unsaid, it was not so prejudicial as to call for reversal. [598]

FOUR INDICTMENTS found and returned in the Superior
Court on March 11, 1966.

The cases were tried before *Paquet,* J.

*Reuben Goodman (Robert W. Banks & Stephen Axelrad*
with him) for the defendants.

*David A. Mills,* Assistant District Attorney, for the Com-
monwealth.

---

[1] One companion case is against Anthony Bottiglio and two are against
John F. O'Connell.

SPALDING, J. The defendants, Bottiglio and O'Connell, were convicted under indictments charging armed robbery and kidnapping at a trial which was subject to the provisions of G. L. c. 278, §§ 33A–33G. Both appealed.

The indictments arose out of the robbery of one Richard Ward, a vending machine serviceman, on February 22, 1966, in Charlestown. Ward testified that while taking cases of cigarettes from the rear of a truck, he heard someone say, "don't move." That person, whom he identified in court as the defendant O'Connell, at gunpoint ordered him to lie down inside the truck. The defendant Bottiglio got out of a car backed two car lengths away and got into the truck and drove it away. He drove to Chestnut Street in Somerville where the defendants removed from the truck the cigarettes and cash that Ward had collected, and placed them in a car that had pulled up behind the truck. Since neither defendant wore a face covering, and the lighting inside the truck was good, Ward had sufficient opportunity to observe the defendants throughout the period of about twenty-five minutes during which the robbery took place. After the defendants departed, Ward drove to the first place that was open and called the police. Officer Baird of the Somerville police arrived, and Ward gave him a description of the men. At police headquarters he selected a photograph of the defendant O'Connell out of some seven or eight racks containing twenty or thirty pictures in a rack. The following morning Ward was called to a lineup at the Somerville police station and identified the two defendants.

Officer Baird corroborated Ward's testimony describing his participation in the events immediately following the robbery. He further testified that on the day following the robbery he went to the Lynn police station about 7 A.M. and proceeded with other policemen to a room on the second floor of an apartment house on Western Avenue in Lynn, which they had determined was occupied by O'Connell. The manager gave them a key to that room. Baird knocked on the door; no one answered. One of the officers used the key to enter. They found the defendants asleep, woke

them up, and placed them under arrest for armed robbery. The room was then searched, but no cigarettes, guns, or bags of money were found. The defendants were taken to the Somerville police station, and the lineup previously mentioned took place. Baird had no search or arrest warrant when he entered the room.

Both defendants took the stand. O'Connell testified that he had spent the entire day of February 22 in Lynn with Bottiglio at Kenny's Café. Bottiglio also testified that he was at Kenny's Café on February 22 with O'Connell. Both defendants denied participation in the robbery.

At the commencement of the trial the defendants moved to suppress evidence obtained from the pre-trial identification that occurred while the defendants were in the custody of the police. A voir dire hearing was held on the motions. The judge denied the motions, and ruled that the lineup was proper, the out-of-court identifications admissible, and in any case, that Ward's in-court identification of the defendants was independent of the lineup identification. The defendants do not now contest that ruling, but argue that Baird's testimony was inadmissible as the fruit of an illegal arrest, and that the judge erred in permitting certain comments by the prosecutor in his closing argument, and in admitting certain evidence which, it is argued, was not relevant.

1. At the close of Officer Baird's testimony the defendant Bottiglio moved to strike his testimony "on the grounds of illegal entry and illegal arrest." This contention had not been made during the hearing on the motions to suppress. Nor was objection made to Baird's testimony when first offered during the trial. Furthermore, the motions did not specify objections to any particular portions of Baird's testimony, but were directed to all of it. The motions were denied and Bottiglio excepted. The Commonwealth argues that the motions were rightly denied because they were lacking in specificity and included evidence that was competent as well as evidence alleged to be incompetent. We are of opinion that this contention must be sustained.

We lay to one side the fact that the attempt to put the evidence out of the cases was made for the first time at the trial instead of by a pre-trial motion to suppress. Generally an attempt to exclude illegally obtained evidence is not timely if made for the first time when the evidence is offered at the trial. *Commonwealth* v. *Lewis,* 346 Mass. 373, 382. *Commonwealth* v. *Stirling,* 351 Mass. 68, 74. *Segurola* v. *United States,* 275 U. S. 106, 111. Where, however, a defendant first learns of the illegal search at the trial, the court, in its discretion, may entertain a motion to suppress at that time. Rule 101B of the Superior Court (effective June 1, 1965). See *Gouled* v. *United States,* 255 U. S. 298, 305. We assume in Bottiglio's favor that that was the situation here.[1] The motions, nevertheless, were rightly denied, for they were directed to all of Officer Baird's testimony; what he said with respect to the search in Lynn was only part of his testimony; much of it had nothing to do with the alleged illegal entry into the room. The motions, if granted, would have struck all of it. Since some portions of it were clearly admissible, the motions were rightly denied. See *Solomon* v. *Dabrowski,* 295 Mass. 358, 359; *Jasper* v. *Worcester Spinning & Finishing Co.* 318 Mass. 752, 759. The judge was not obliged to separate the admissible from the inadmissible. That duty devolved on counsel pressing the motion. In view of this conclusion, we do not reach the question of the legality of the officers' entry into the defendants' room or the arrests resulting therefrom.[2]

---

[1] There being no direct evidence on the matter, it is by no means clear that the defendants learned of the alleged illegal entry for the first time when the evidence was offered at the trial. Perhaps an inference could be drawn that they did. But a contrary inference was equally permissible.

[2] The basis for the challenging of the arrests is that before entering the room where the defendants were found and arrested Officer Baird merely knocked on the door and then the door was opened with a key. Bottiglio argues that the officer should have announced the purpose of the entry, and made a demand upon the occupants to open the door, and that only upon their refusal to do so did the officer have a right to enter. See *Ker* v. *California,* 374 U. S. 23, 37–41, 44–46, and cases cited in *Commonwealth* v. *Rossetti,* 349 Mass. 626, 634, footnote 9. Properly no contention is made that the officers did not have a right to enter the room if they had complied with these requirements, for they had probable cause to believe the defendants had committed a felony. *Commonwealth* v. *Phelps,* 209 Mass. 396, 407–408.

2. At the conclusion of the arguments, counsel for Bottiglio stated that he excepted to the prosecutor's comment "on the failure to produce witnesses." The judge stated that he "want[ed] it to appear [that] the objection didn't occur . . . [until] after the arguments had concluded." See *Commonwealth* v. *Hassan*, 235 Mass. 26, 33. The arguments of counsel were not taken by the stenographer and we do not know what was said. The judge, however, in his charge undertook to discuss briefly the subject of comment on the failure to produce witnesses. But his remarks tell us very little about the nature of the comment. All that was said by the judge in this respect was, "One thing was said in argument by . . . [the prosecutor] about the availability of a witness, I think it was the owner of – – part owner of the bar, and it requires some comment." The judge then proceeded to instruct the jury concerning comment for failure to produce a witness. These instructions included statements that "Ordinarily, there can be no . . . unfavorable comment about the absence of a witness unless it is first shown that the witness was available," and "[m]erely because someone is not present doesn't necessarily mean that an unfavorable inference can be drawn." Bottiglio complains that the judge erred in leaving the question of the propriety of the comment to the jury. We need not consider that question, for not enough appears in this record to show precisely what was said by the prosecutor. It was incumbent upon Bottiglio as the appealing party to put enough in the record pertinent to the point to enable us to decide it without resort to speculation. *Commonwealth* v. *Rivers*, 307 Mass. 225, 227. See *Commonwealth* v. *Sheppard*, 313 Mass. 590, 600–601. This he has failed to do.

3. The defendants complain that they were prejudiced by the introduction of evidence of their marital status. Specifically, the prosecutor elicited from the defendant Bottiglio that he had been married nineteen years and had three children but did not live with his wife. In the case of the defendant O'Connell it was brought out that he was divorced and living apart from his wife on the day of the

robbery. It is apparent from the context of this evidence that it was not introduced for impeachment purposes, and evidently counsel for the defendants did not so consider it, for they did not object to it. Since this evidence came in without objection or exception we need not consider it; its admissibility cannot be raised for the first time in this court. *Donahue* v. *Dal, Inc.* 314 Mass. 460, 463.

4. Two police officers, Baird and one Gleason, were permitted to testify, over objection and exception, that prior to the robbery they had seen the defendants at various times together at Donovan's Café either at a table or at the bar. The relevancy of this evidence is slight, but it had some tendency to show that the defendants knew each other and were frequently together. While this evidence might have been excluded, we cannot say that its admission was prejudicial error.

5. In his closing argument the prosecutor referred to the defendants as "people like these sitting around hatching up jobs." At the conclusion of the argument counsel for Bottiglio excepted to the remark. This statement might well have been left unsaid, but we are not prepared to say that it was so prejudicial as to call for reversal. See *Commonwealth* v. *Smith*, 342 Mass. 180, 188. As we observed in that case it is not every impropriety that occurs in a trial that requires reversal. The test is, quoting from *People* v. *Kingston*, 8 N. Y. 2d 384, 387, "whether the claimed defect influenced the jury and tainted its verdict. If the record demonstrates that it did not, then, the defendant is not entitled to a second trial."

*Judgments affirmed.*